**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN A. FLEISCHMANN**, | ) |
| Plaintiff, | ) |
| v. | ) 2:07cv1719 |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) **Electronic Filing** |
| Defendant. | ) |

**MEMORANDUM OPINION**

November 20, 2009

**I.   INTRODUCTION**

Plaintiff, John A. Fleischmann, commenced the instant action on December 14, 2007, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §401 *et seq,* §1381 *et seq*. Plaintiff filed an application for SSI and DIB on April 25, 2005, alleging that he was disabled since January 1, 2004, due to depression. (AR. 19).  His application was initially denied, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR. 70).  A hearing was held on March 14, 2007, and following this hearing, the ALJ found that Plaintiff was not disabled at any time through the date of the decision, and therefore was not eligible for SSI or DIB benefits. (AR.19-27).  Plaintiff made a request for review by the Appeals Council which was denied (AR. 5-7,15), thus rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  Upon analysis and consideration of each submission, and as set forth herein, the Commissioner's Motion for Summary Judgment is denied, Plaintiff's Motion for Summary Judgment is granted and the decision of the Administrative Law Judge is reversed and remanded.

**II.  STANDARD OF REVIEW**

When reviewing a decision denying DIB and SSI, the district court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales,* 402 U.S. 389,  401 (1971)).  Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive.  42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390.  In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. §706.

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The ALJ must utilize a five-step sequential analysis when evaluating the disability status of each claimant. 20 C.F.R. §404.1520.  The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., pt. 404 subpt. P., appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4).

If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiffs's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

### III.   FACTUAL HISTORY

Plaintiff was born on January 14, 1959, and was 48 years old on the date of the ALJ's decision. (AR. 19, 33).  He graduated high school and has a Bachelor's degree in business information systems and has past relevant work history as a contract consultant. (AR. 33, 87).

On April 20, 2004, Plaintiff was seen by Dr. Jeffery Gretz having complaints of depression. (AR. 132).  Plaintiff complained of not being able to sustain employment or have ambition towards getting a new job and Plaintiff associated his depression to his divorce.  (*Id*.). Dr. Gretz recommended that Plaintiff take Lexapro and for Plaintiff to seek counseling if he desired. (*Id*.).  On July 20, 2004, Dr. Gretz noted that Plaintiff was still suffering from depression and that Plaintiff did not receive any benefit from the Lexapro. (AR. 131).  Dr. Gretz then recommended that Plaintiff take Wellbutrin. (*Id*.).  On August 18, 2004, Plaintiff complained to Dr. Gretz that the Wellbutrin was causing him to feel nauseated and have a little bit of tachycardia. (AR. 130).  Dr. Gretz suggested that the tachycardia might be secondary from an upcoming custody trial that Plaintiff was facing as his EKG showed no signs of any significant abnormality. (*Id*.).  On November 22, 2004, Dr. Gretz reported that Plaintiff was still suffering from some degree of depression and he was going to prescribe Cymbalta. (AR.129).  On March 7, 2005, Dr. Gretz noted that Plaintiff was feeling more upbeat although he had not yet been able to find a job and still had some degree of depression. (AR.128).  Plaintiff stated that he was interested in pursuing counseling, which Dr. Gretz then referred him to. (*Id*.).

Plaintiff was given a clinical psychological disability evaluation by Dr. Lanny Detore on July 9, 2005. (AR.134). Dr. Detore reported that it was obvious from Plaintiff's appearance that he suffered from some depression, as Plaintiff was unshaven and somewhat disheveled. (*Id*.). Plaintiff reported that he continued to take the Cymbalta, however, he admitted he would stop taking the medication for a few days because of unspecified side effects. (AR.135). Plaintiff reported that the Cymbalta had been mildly helpful in alleviating his depression. (*Id*.). Dr. Detore noted that Plaintiff's depression appeared to be primarily situationally related and he would respond to counseling. (*Id*.). Plaintiff also told Dr. Detore that he shared a house with a friend, he lived independently, retained his daily living skills, and that though he had friend, he limited his social contact. (AR. 135-136).

Plaintiff told Dr. Detore that he suffered a decrease in motivation, interest and energy. (AR. 135). Plaintiff also complained of erratic sleep patterns, decrease in appetite, and significant weight fluctuation. (AR. 136). Plaintiff denied any delusional activity, paranoia, hallucinations or any active suicidal ideation. (*Id*.). Plaintiff also reported a loss in interest in his prior hobbies of tennis and hunting. (*Id*.). Plaintiff's affect was sad and his mood was moderately depressed (*Id*.). Dr. Detore indicated that Plaintiff's concentration and memory were fair and that he had difficulty with distractibility and attentiveness, particularly on job interviews. (*Id*.).

Plaintiff was able to add subtract and multiply single digits, process serial sevens and no difficulty with immediate memory recall. (AR.137). Dr. Detore found that Plaintiff's prognosis was fair to good depending on whether he received mental health treatments and antidepressants. (*Id*.). Dr. Detore determined that Plaintiff was able to live independently and manage minimally his daily living skills, that he could focus enough to prepare meals, however, his social activities and relationships suffered due to his depression. (*Id*.). Dr. Detore also determined that Plaintiff was competent to manage his own benefits. (*Id.*).

Dr. Detore opined that Plaintiff had slight limitations in his ability to understand, remember, and carry out, short simple instructions. (AR. 139.)   Plaintiff had moderate limitations in his ability to understand, remember, and carry out, detailed instructions, and make simple work-related judgements. (*Id*.).   Plaintiff was found to have moderate limitations in his ability to interact appropriately with the public, supervisors, co-workers and to respond to usual and routine work settings. (*Id*.).

On July 18, 2005, Plaintiff received a state agency psychiatric evaluation by Dr. Larry Smith. (AR. 141-157).  Dr. Smith evaluated Plaintiff as having Major Depressive Disorder and had mild restrictions in activities of daily living and moderate difficulty in maintaining social functioning, and concentration, persistence, or pace. (AR. 151).  In Dr. Smith's mental residual functional capacity assessment of Plaintiff, he determined that Plaintiff had only moderate limitations in his ability to understand and remember instructions, carry out detailed instructions, maintain attention for an extended period, and sustain a routine without special supervision. (AR. 154).  Dr. Smith also determined that Plaintiff was moderately limited in his ability to complete a normal workday or workweek, interact appropriately with the public, get along with co-workers, and set realistic goals. (AR. 155).  Dr. Smith determined that Plaintiff could be expected to understand and remember simple one and two step instructions and perform simple, routine, repetitive work. (AR. 156).  Dr. Smith opined that Plaintiff's limitations did not preclude him from performing the basic mental demands of competitive work on a sustained basis. (*Id*.).

On December 6, 2005, Plaintiff was seen at the Centerville Clinic by Dr. Edward Salopek. (AR. 168).  Plaintiff stated that he was currently seeing a counselor and taking Cymbalta and Alprazolam[1] and that he was feeling better although he was having trouble dealing with not seeing his children. (*Id*.).  Plaintiff stated that he would like to see a psychiatrist. (*Id*.).

---

[1]Alprazolam is in a group of drugs called benzodiazepines. It works by slowing down the movement of chemicals in the brain that may become unbalanced. This results in a reduction in nervous tension (anxiety).  Alprazolam is used to treat anxiety disorders, panic disorders, and anxiety caused by depression. http://www.drugs.com/alprazolam.html (last visited 11/6/2009)

Dr. Salopek found Plaintiff's affect depressed, but he was well-spoken. Plaintiff's medication regimen was continued and he was referred for mental health services. (AR. 169).

On January 20. 2006, an adult assessment was performed on Plaintiff as part of his intake evaluation for mental health services. (AR. 177-183). In the assessment, Plaintiff stated that he off all medication (AR. 177), denied any suicidal ideation and denied having a history of psychiatric treatment. (AR. 179, 183). Plaintiff's mood and affect were normal, his appearance was normal, and he was cooperative and relaxed. (AR 181-182). Plaintiff communicated well, and his attention, concentration and thought processes were assessed as normal. (AR. 177, 181). Plaintiff was referred for therapy and medication management. (AR. 185).

Plaintiff was seen for a follow-up on February 15, 2006, where he stated that he was tapering off taking Cymbalta. (AR. 166). On June 8, 2006, Plaintiff had a follow up with Dr. Salopek , who stated that Plaintiff had been weaned off his Prozac and changed to Effexor, but that Plaintiff discontinued the Effexor because he suffered side effects. (AR. 164). Dr. Salopek then started Plaintiff on Paxil. (*Id*.). On July 11, 2006, Dr. Salopek noted that Plaintiff discontinues the Paxil as well, complaining of side effects. (AR. 163). Plaintiff continued to see Dr. Salopek, however, the later appointments only concerned some arm bruises and an eye injury. (AR. 159-63).

A report from the Centerville Clinic dated January 20, 2006, stated that Plaintiff has had depression for one year due to his divorce and lack of contact with his children. (AR. 177). Plaintiff reported trouble falling asleep and staying asleep, loss of appetite, interest and energy, feelings of guilt, poor memory and concentration, low self-esteem, however, he denied any

suicidal or homicidal ideation. (AR. 178). Plaintiff was assessed of having a GAF score of 45.[2] (AR. 183).

On February 20, 2006, Plaintiff was assessed by Dr. Michael Malayil at the Centerville Clinic (AR. 186-87). Dr. Malayil stated that Plaintiff was completely detaching from other people and was isolating himself. (AR.186). Plaintiff was well oriented and cooperative, however, he had vegetative signs of depression marked with a loss in the capacity to experience pleasure, low self-esteem and guilt. (*Id*.). Plaintiff denied suicidal or homicidal ideation and his cognitive functions were intact and had good recent and remote memory. (*Id*.). Dr. Malayil assessed Plaintiff as having a GAF of 70[3] and he advised Plaintiff to continue therapy and begin taking Prozac. (AR.186-87).

On March 31, 2006, Plaintiff underwent a psychiatric evaluation by Dr. Ravindrak Mehta. (AR.188-89). Dr. Mehta found Plaintiff to be anxious and having feelings of hopelessness, however, Plaintiff had no indication of homicidal or suicidal ideation. (AR.189). Dr. Mehta assessed Plaintiff as having a GAF of 50 and recommended that Plaintiff continue his individual therapy and Prozac. (*Id*.). On April 17, 2006, Dr Mehta recorded in his notes that Plaintiff had not been shaving, was not working and had feelings of loneliness. (AR.190). On May 15, 2006, Dr. Mehta noted that Plaintiff seemed disturbed and had stated that he did not eat for three days. (AR.190-91). Plaintiff stated that he was feeling about the same although he did try to stay

---

[2]The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job). *Id*. (emphasis in original).

[3]A score between 61 and 70 indicates some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000).

positive. (AR.191). Dr. Mehta noted that Prozac caused Plaintiff GI disturbance and that Plaintiff was not ready for a consistent gainful job. (*Id*.). On June 7, 2006, Dr. Mehta noted that Plaintiff had GI side effects from Effexor and that Plaintiff looked disheveled and had no improvement from the medication. (AR.192). On July 7, 2006, Plaintiff told Dr. Mehta that he had lost a lot of his motivation and was suffering from chronic isolation. (*Id*.).

On August 22, 2006, Plaintiff was seen by Dr. Sheikh, who noted that Plaintiff was doing fine without medication and his mood was a little better. (AR.193). Dr. Sheikh stated that Plaintiff was safe and able to care for himself, however, he advised Plaintiff if he were to become unsafe or unable to care for himself he would need to be hospitalized . (*Id*.). Dr. Sheikh also advised Plaintiff to try volunteer work. (*Id*.). On November 14, 2006, Dr. Sheikh noted that Plaintiff was still feeling depressed and had lost weight. (AR.194).

Plaintiff's hearing before the ALJ was held on March 14, 2007. (AR. 29-67). Plaintiff and vocational expert Elizabeth Lucas testified and Plaintiff was represented by counsel. (AR. 329). Plaintiff testified that he had trouble focusing, concentrating and dealing with people and had occasional crying spells. (AR.34). Plaintiff stated that his crying spells were triggered by thinking about or being reminded about his family situation. (AR.48-49). Plaintiff testified that on most nights he slept only two to three hours and that he worried a lot. (AR.42-43). Plaintiff also stated that he had lost interest in his hobbies, such as hunting and that he had trouble remembering appointments. (AR.45-46). Plaintiff further stated that he had recurring, intrusive thoughts about his family. (AR.50).

The vocational expert opined that someone that was limited in the ability to deal with the public, having minimal interaction with peers and supervisors, limited in the ability to follow detailed instructions, coping with stress in emergency situations, making complex decisions, and adapted to frequent workplace changes would have the ability to perform the positions of cleaner housekeeping, hospital cleaner, and addresser. (AR. 60-61). The vocational expert testified if the hypothetical person was limited to medium physical exertion, with no public interaction, no

interaction with co-workers, minimal interaction with supervisors, no repetitive tasks, no detailed instructions, and no decision making or production quotas then there would not be any positions available in the economy. (AR. 62-64).

The ALJ found Plaintiff to have the severe impairment of depression. (AR. 21). The ALJ determined that Plaintiff retained the residual functional capacity to perform work at all exertional levels which would not involve dealing with the public, having more than minimal interaction with peers and supervisors, following detailed instructions, coping with stress in emergency situations, making complex decisions, and adapting to frequent changes in a work setting and could perform jobs that exist in significant numbers in the national economy. (AR. 23-26).

### IV. LEGAL ANALYSIS

Plaintiff argues that the ALJ erred in the following respects: that the ALJ ignored evidence from Plaintiff's treating psychiatrists and that the ALJ accepted the opinion of the consultative examiner without explaining inconsistencies contained in the examiner's report. The Court shall address each argument in turn.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) *quoting Plummer*, 186 F.3d at 429. The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at

317-318 (citations omitted).  However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno v. Shalala,* 40 F.3d 43, 47-48 (3d Cir. 1994), *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.").

> Moreover, the Commissioner/ALJ:
>
> must "explicitly" weigh all relevant, probative and available evidence.... [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.... The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). In developing the record, the Third Circuit has recognized "an acute need" for explaining the reasoning behind any conclusions an ALJ makes in reconciling  conflicting testimony. *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001).

Plaintiff argues that the ALJ failed to discuss evidence in the record that should have been explicitly considered and discussed.  Specifically, Plaintiff points to notes by his treating psychiatrists Dr. Sheikh, Dr. Mehta and Dr. Malayil that the ALJ neither dismissed nor discussed in her opinion.  The record indicates that the notes by the treating psychiatrists could have lent support to a finding of disability, in particular, the notes by Dr. Sheikh and Dr. Mehta noting Plaintiff's ongoing sleep disturbances and reduced appetite, and Dr. Mehta's notes indicating that he found Plaintiff to be distracted and that Plaintiff was "not ready for a consistent gainful job" (AR. 190-94).  Because the notes of Dr. Sheikh and Dr. Mehta could have made more likely the finding that Plaintiff was disabled, the notes were relevant and probative to Plaintiff's disability determination.  The only mention in the ALJ's opinion of these records is where she noted Dr.

Sheikh's suggestion that Plaintiff get involved with volunteer work, church or other activities. (AR. 24, 193). This lone reference to Dr. Sheikh's suggestion is inadequate to determine whether the record evidence was properly considered.

Defendant argues that the record as a whole, however, indicates that Plaintiff retained the capacity to perform unskilled, simple routine work. In support, Defendant cites to Dr. Gretz and Dr. Mehta's notes that stated that Plaintiff was counseled on finding a job. (AR. 129, 189). However, the issue is not simply whether the ALJ cited records that supported her conclusion that Plaintiff was not disabled, but rather whether the ALJ properly considered medical evidence that could have supported a finding of disability. Without a discussion of the treating psychiatrists opinions that could have lead to the conclusion that Plaintiff was disabled under the Act, substantial evidence cannot be said to support the ALJ's opinion.

In addition, the ALJ provided no discussion of Dr. Mehta's psychiatric evaluation of Plaintiff, including his evaluation of a GAF score of 50. (AR.188-89). Defendant argues that the GAF score was not entitled to any probative value since Dr. Malayil had previously rated Plaintiff's GAF at 70 thereby illustrating ambiguity in the value of the GAF scores. (AR.186-87). However, the ambiguity identified by the Defendant in the record should have been resolved by the ALJ in her opinion. *See Adorno*, 40 F.3d at 48. As a result, this case must be remanded for consideration of the treating psychiatrists records and opinions that could have supported a finding of disability.

Plaintiff additionally argues that the ALJ failed to resolve inconsistencies that exist in the consultative examiner's record. In particular, because Dr. Detore made findings as to Plaintiff's depressed appearance, poor attention to personal care, disturbed sleep, weight fluctuations and distractibility, Dr. Detore's conclusion that Plaintiff was only moderately to slightly impaired was inconsistent with his findings. In her opinion the ALJ did not discuss whether the findings of Dr. Detore that would have tended to support a finding of greater limitations were considered when she relied on his opinion in making the finding of no disability. Without a discussion as to

Dr. Detore's findings the court cannot determine if his report was given appropriate weight, which therefore requires reconsideration on remand. Furthermore, in light of the reports of Dr. Sheikh, Dr. Mehta and Dr. Malayil that must be considered on remand, Dr. Detore's findings as to the severity of Plaintiff's symptoms should also be reconciled with the record as a whole if Dr. Detore's report is to be given any weight.

### V. CONCLUSION

In viewing the record as a whole, substantial evidence cannot be said to support the Commissioner's final decision without explicit consideration of Plaintiff's treating psychiatrists' and the consultative examiner's medical findings. As a result, this case is remanded for reconsideration.

An appropriate Order follows.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:    Joanna P. Papazekos, Esquire
       Caroselli, Beachler, McTiernan & Conboy
       Seventh Floor
       20 Stanwix Street
       Pittsburgh, PA 15222

       Jessica Liebar Smolar
       Assistant United States Attorney